1
2
3
4
5

6              **UNITED STATES DISTRICT COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8

9    LENDRA ELIZABETH ANN          )  Case No. CV 10-4058 JCG
     MERKER,                        )
10                                   )
                                     )
11        Plaintiff,                 )
                                     )  **MEMORANDUM OPINION AND**
12        v.                         )  **ORDER**
                                     )
13   MICHAEL J. ASTRUE,              )
     COMMISSIONER OF SOCIAL          )
14   SECURITY ADMINISTRATION,        )
                                     )
15                                   )
          Defendant.                 )
16   _____    )

17                                   **I.**

18                  **INTRODUCTION AND SUMMARY**

19        On May 28, 2010, plaintiff Lendra Elizabeth Merker ("Plaintiff") filed a

20   complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of

21   the Social Security Administration, seeking review of a denial of disability insurance

22   benefits ("DIB").  [Docket No. 1.]  On December 15, 2010, Defendant filed his

23   answer, along with a certified copy of the administrative record ("AR").  [Docket

24   Nos. 10, 12.]

25        On February 18, 2011, the parties submitted a detailed, 39-page joint

26   stipulation ("Joint Stip.").  [Docket No. 13.]

27        In sum, having carefully studied, *inter alia*, the parties' joint stipulation and

28   the administrative record, the Court concludes that, as detailed herein, the

Administrate Law Judge inappropriately discounted Plaintiff's subjective complaints about the severity of pain and her limitations. The Court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

### PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 59 years of age on the date of her administrative hearing, has completed two years of college. (*See* AR at 45, 58, 487.) Her past relevant work includes employment as a district manager of a sale and marketing department for a winery and as a sale person for a wine warehouse. (*Id.* at 75.)

Plaintiff filed for DIB on November 30, 2005, alleging that she has been disabled since August 27, 2000 because of injuries to and pain in her lower back, left foot, and right knee. (AR at 45, 51, 52, 66, 92.) Plaintiff's application was initially denied after which she filed a timely request for a hearing. (*Id.* at 34, 38-42, 43-44.)

On February 22, 2008, Plaintiff, proceeding *pro se*, appeared and testified at a hearing before an ALJ. (AR at 489-500.) The ALJ also heard testimony from Plaintiff's friend Karen Erwin. (*Id.* at 496-98.)

On November 5, 2008, the ALJ denied Plaintiff's request for benefits. (AR at 21-28.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability. (*Id.* at 23.)

At step two, the ALJ found that Plaintiff "had the following severe impairments: depression, left foot pain possibly secondary to recurrent neuroma, and status post partial medial meniscectomy in 1998." (AR at 23.)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically

equal the severity of any listing set forth in the Social Security regulations.[1/] (AR at 23.)

The ALJ then assessed Plaintiff's residual functional capacity[2/] ("RFC") and determined that she was limited to performing light work. (AR at 24.) The ALJ also found that Plaintiff was limited to "standing/walking for 4 hours and sitting for at least 6 hours in an 8 hour day[.]" (*Id.*) The ALJ also ascertained that Plaintiff was precluded "from climbing ladders/ropes/scaffolds" and had a "mild limitation in the ability to balance and crawl, and moderate limitation in the ability to maintain concentration and attention for at least 2 hour increments and withstand the stress and pressures associated with an 8 hour workday and day to day work activity." (*Id.*)

The ALJ determined, at step four, that Plaintiff has the ability to perform her past relevant work. (AR at 27.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 21, 27-28.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 6-8, 16.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

---

[1/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

1 Administration must be upheld if they are free of legal error and supported by

2 substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

3 *amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings

4 are based on legal error or are not supported by substantial evidence in the record,

5 the court may reject the findings and set aside the decision to deny benefits.

6 *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

7 242 F.3d 1144, 1147 (9th Cir. 2001).

8       "Substantial evidence is more than a mere scintilla, but less than a

9 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant

10 evidence which a reasonable person might accept as adequate to support a

11 conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d

12 at 459. To determine whether substantial evidence supports the ALJ's finding, the

13 reviewing court must review the administrative record as a whole, "weighing both

14 the evidence that supports and the evidence that detracts from the ALJ's

15 conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed

16 simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d

17 at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the

18 evidence can reasonably support either affirming or reversing the ALJ's decision,

19 the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*

20 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

21 **IV.**

22 **ISSUES PRESENTED**

23     Six disputed issues are presented here:

24     1.    whether Plaintiff's waiver of right to counsel was adequately informed,

25 (Joint Stip. at 3, 4-7);

26     2.    whether, because Plaintiff was not represented by counsel, the

27 subsequent proceedings were unfair, (Joint Stip. at 3, 7-16);

28     3.    whether the ALJ provided clear and convincing reasons for discrediting

4

1 | Plaintiff's subjective complaints of pain, (Joint Stip. at 3, 16-22);

2 |     4.    whether the ALJ properly considered the testimony of Plaintiff's friend,

3 | Karen Erwin, (Joint Stip. at 3, 22-25);

4 |     5.    whether the ALJ provided legally sufficient reasons for discrediting the

5 | opinions of the treating physicians, Drs. Roberg and Hayden, (Joint Stip. at 4, 25-

6 | 34); and

7 |     6.    whether the ALJ provided legally sufficient reasons for discrediting the

8 | opinion of the treating chiropractor, Dr. Jensen. (Joint Stip. at 4, 34-37.)

9 |     At this juncture, the Court finds the issue of Plaintiff's credibility to be

10 | dispositive of this matter, and does not reach the remaining issues.

**V.**

**DISCUSSION AND ANALYSIS**

13 |     Plaintiff argues that the ALJ's reasons for rejecting Plaintiff's testimony do

14 | not "pass muster." (Joint Stip. at 18.) Plaintiff asserts that the ALJ rejected

15 | Plaintiff's testimony "on the grounds that it is not supported by sufficient medical

16 | evidence" which, by itself, is not a legitimate basis for not accepting Plaintiff's

17 | testimony. (*Id.*) Plaintiff also claims that the ALJ failed to "identify specifically

18 | what evidence [the ALJ] believed was in conflict with any portion of [Plaintiff's]

19 | testimony." (*Id.*) Plaintiff concludes that the ALJ did not offer clear and convincing

20 | reasons for the rejection of Plaintiff's testimony. (*Id.* at 18-19.)

21 |     Defendant contends that the ALJ properly discounted Plaintiff's credibility

22 | because: (1) "the objective medical evidence did not support the degree of disability

23 | alleged by Plaintiff"; and (2) Plaintiff's treatment of her alleged debilitating

24 | psychological problems was "routine and conservative." (Joint Stip. at 20.)

26 |     A.    <u>The ALJ Must Provide Clear and Convincing Reasons For Discounting</u>

27 |            <u>Plaintiff's Subjective Complaints</u>

28 |     Plaintiff, of course, carries the burden of producing objective medical

evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17, 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain.") (internal citation omitted).

Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility:

(1) his or her reputation for truthfulness;

(2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct;

(3) his or her daily activities;

(4) his or her work record; and

(5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 21-28). Thus, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

///

///

1        B.      Plaintiff's Subjective Complaints

2        In a daily activities questionnaire, Plaintiff wrote that she was unable to work

3   because of "constant and severe" pain in her left foot, leg, and right knee.  (AR at

4   92.)   Plaintiff said that her knee would "also [go] out." (*Id.*)  Plaintiff reported that

5   she was depressed, stressed, and able to wear shoes for only a short period of time.

6   (*Id.*)  Plaintiff claimed that she can only walk for about twenty-five minutes before

7   she suffers "unbearable" pain including foot cramps, tightness and spasms in her leg,

8   and her knee goes out.  (*Id* at 92, 97.)  Plaintiff also said that sitting or standing for

9   more than twenty-five minutes also could cause her to experience "constant and

10  severe" pain.  (*Id.* at 95, 97.)  Plaintiff noted that her job required her to drive.  (*Id.*

11  at 130.)  Plaintiff stated that she had experienced this pain since 1998 when she was

12  injured while working.  (*Id.* at 95.)

13       Plaintiff testified at her hearing that after her initial injury she had surgery to

14  correct the problem.  (*See* AR at 491.)  Plaintiff said that she returned to work until

15  she was physically unable to continue working.  (*Id.*)  Plaintiff reported seeing

16  multiple doctors but "[n]obody could really figure out what was going on[.]"  (*See*

17  *id*. at 491, 492.)  Plaintiff claimed that because her insurance company mishandled

18  her, her condition was not properly treated.  (*See id.* at 123, 492, 493.)  Plaintiff

19  further testified that her medications make her unable to concentrate, have blurred

20  vision, and have poor memory.  (*Id.* at 495.)  Plaintiff said that "[her] doctors have

21  said that they don't believe that [Plaintiff will] ever be able to work again in a

22  regular position."  (*Id.*)

23       C.      ALJ's Purported Reasons For Discounting Plaintiff's Credibility

24       In rejecting Plaintiff's credibility, the ALJ found that Plaintiff's "medically

25  determinable impairments could reasonably be expected to cause the alleged

26  symptoms; however [Plaintiff's] statements concerning the intensity, persistence and

27  limiting effects of these symptoms are not credible to the extent they are inconsistent

28  with the . . . residual functional capacity assessment."  (AR at 27.)  The ALJ further

said that Plaintiff's testimony regarding her symptoms and limitations was "not well-supported by medically and/or psychologically acceptable clinical, laboratory and diagnostic techniques, and [was] not consistent with other substantial medical and/or psychological evidence in the record, as supported by the interrogatory responses of medical expert Dr. Gurvey." (*Id.*) The ALJ added that, in regard to Plaintiff's mental impairments, the medical records "show that treating physicians responded with limited and conservative treatment." (*Id.*)

### D.     ALJ Inappropriately Discounted Plaintiff's Credibility

After a careful review of the medical record and the parties' papers, the Court has considered the ALJ's reasons for finding Plaintiff not credible, and concludes that a remand is warranted on this issue. Three reasons guide this Court's determination.

First, the ALJ erred to the extent he rejected Plaintiff's credibility based on a lack of objective medical evidence. (*See* AR at 27.) Plaintiff provided sufficient medical evidence of an underlying impairment that was reasonably likely to cause the symptoms and limitations she described. For instance, the following ten items substantiate the objective medical evidence in this case:

1.     An examination report, dated July 25, 2001, stated that there was "diminished left ankle reflex, spasm of lumbar paraspinal muscles as well as positive nerve tension signs, all reflective of probable lumbar nerve root dysfunction." (AR at 177.) The same report also diagnosed Plaintiff with: (1) chronic low back, left leg and foot pain; and (2) burning pain in the lower leg and left foot. (*Id.*)

2.     An evaluation report, dated June 9, 2005, described that Plaintiff had: (1) degenerative disc disease; (2) a possible medial meniscus tear in her right knee; (3) post arthroscopy partial medial meniscectomy in her left kneed; and (4) post excision interdigital neuroma with residual neuroma in her left foot. (AR at 192.) The report concluded that "[the doctor does not] envision [Plaintiff] will return to her usual and customary [sic] whether she does permanent and stationary or is

operated on and then goes permanent and stationary at a later date and would recommend early vocational rehabilitation." (*Id.* at 195.)

3. Treatment notes from Dr. Stanley Jensen, dating from March 4, 2005 to November 7, 2007, saying that Plaintiff continuously received treatment for back pain and that she constantly had limitations in her lumbosacral range of motion. (*See* AR at 196-212, 371-88.)

4. An MRI report, dated October 4, 2005, noted that Plaintiff had: (1) levoscoliosis lumbosacral junction; (2) midline disc protrusion of 3 millimeter ("MM"); (3) right lateral disc protrusion of 2-3 MM; and (4) a disc bulge. (AR at 390.)

5. An MRI report, dated October 4, 2005, said that Plaintiff had: (1) irregularity along the free edge of the posterior horn and body of the medial meniscus with associated intermediate signal intensity and some blunting of the meniscal free edge towards the intercondylar notch; (2) linear intermediate signal intensity anterior horn lateral meniscus appearing to contact the inferior articular surface; and (3) focal ovoid to low signal intensity focus within the medial femoral diaphysis. (AR at 392.)

6. A series of Primary Treating Physician's Progress Reports filled out by Dr. Jensen, dating from September 10, 2001 to January 21, 2005, continuously noted that Plaintiff, at the time of each assessment, could not work. (*See* AR 396-428.)

7. A Medical Source Statement report, dated February 20, 2008, said that Plaintiff was able to stand or walk for less than two hours and must alternate her position in order to sit continuously. (*See* AR at 430.) That report also said that Plaintiff "cannot bend, stoop, cannot lift or carry, climb, cannot stand for long periods of time." (*Id.*) The report noted that Plaintiff had these limitations for four years and that these limitations would disrupt a regular job schedule with low physical demands forty-hours per week. (*Id.*)

8. An evaluation report, dated April 19, 2008, noted that Plaintiff's knee

1  pain likely stemmed from degenerative joint disease.  (AR at 444, 448.)  The report

2  also stated that Plaintiff had low back pain "with suspected l5-S1 radiculopathy due

3  to pain and sensory loss."  (*Id.* at 448.)  The report noted that Plaintiff, with

4  verification of radiculopathy, would only be able to stand and walk for

5  approximately four hours and that Plaintiff's right knee pain would restrict that even

6  further.  (*Id.*)  The report concluded by saying that Plaintiff "will likely have

7  difficulty tolerating even lightly strenuous work activity due to pain."  (*Id.* at 449.)

8        9.    A Medical Source Statement (Mental) from Dr. Lisa J. Hayden, dated

9  January 15, 2008, noted that Plaintiff was extremely limited in her ability to

10  maintain concentration and attention for at least two hour increments and in her

11  ability to withstand the stress and pressures associated with an eight-hour work day

12  and day-to-day work activity.  (AR at 354-58.)  The statement also said that Plaintiff

13  had mild, moderate, and marked limitations in almost every other category.  (*Id.* at

14  354.)  Dr. Hayden diagnosed Plaintiff with depression due to her medical condition.

15  (*Id.* at 356.)

16        10.   Dr. Diana Sharpe, a medical expert, interrogatory, dated May 17, 2008,

17  noted that, according to Plaintiff's complaints and her history, Plaintiff suffered

18  from depression.  (AR at 458, 462.)  According to Dr. Sharpe, Plaintiff's

19  psychological conditions would moderately impair her ability to maintain

20  concentration and attention for at least two-hour increments and her ability to

21  withstand the stress and pressures associated with an eight-hour work day and day-

22  to-day work activity.  (*Id.* at 461.)

23        Because Plaintiff produced sufficient medical evidence of underlying

24  impairments that were likely to cause foot pain, back pain, and other subjective

25  symptoms, the ALJ erred to the extent he rejected Plaintiff's credibility based upon a

26  lack of objective findings to support her allegations.  *See Bunnell*, 947 F.2d at 345

27  ("[O]nce the claimant produces objective medical evidence of an underlying

28  impairment, [the ALJ] may not reject a claimant's subjective complaints based

solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); Social Security Ruling ("SSR") 96-7P,[3/] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Second, the ALJ rejected Plaintiff's credibility based on her inconsistency "with other substantial medical and/or psychological evidence in the record, as supported by the interrogatory responses of medical expert Dr. Gurvey." (AR at 27.) But Dr. Gurvey did not examine Plaintiff; instead, Dr. Gurvey gained all of his information from Plaintiff's medical records from 2005 onward. (*Id.* at 466, 471.) "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)(citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Gurvey wrote that his opinion only supported two others in the entire record. (AR at 471.) One of these opinions held that Plaintiff was much more limited than Dr. Gurvey did while the other was a check-the-box form bereft of substantial explanations. (*See id.* at 215-22, 444-55.) The check-the-box opinion without explanation does not have substantial weight. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)(saying that a check-the-box form absent sufficient explanation is

---

[3/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

inadequate). Since, as cited *supra*, there is a wealth of medical records that support Plaintiff's claims and an absence of correlative reports for Dr. Gurvey, it would appear inappropriate to only use Dr. Gurvey's opinion as the substantial evidence necessary to rebut Plaintiff's testimony. (*See generally* AR at 390, 392, 396-428, 430, 448, 449); *see also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

Third, the ALJ found Plaintiff's statements regarding her mental impairments not credible because her treating physicians only gave Plaintiff limited and conservative treatment. (AR at 27.) Plaintiff only saw one doctor for her mental problems. (*See id.* at 354-63.) Plaintiff only began seeking treatment for her mental problems in 2006. (*See id.* at 356, 493.) Plaintiff testified that some of the primary causes of her depression were her difficulties with her insurance company and the depletion of her retirement reserves. (*Id.* at 492, 493.) According Plaintiff, these events began to take their toll on her in 2005. (*See id.* at 492.) Plaintiff mentioned that her mental state's deterioration, which started in 2005, became bad enough in 2006 that she sought help. (*See id.* at 494.) Although the ALJ described Plaintiff's treatment as conservative, she went to therapy every week for over a year. (*Id.* at 356-58.) Additionally, Plaintiff was on Celexa, an anti-depressant. (*Id.* at 356.) Evidence of conservative treatment is enough to discount a claimant's testimony regarding the severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). However, based on Plaintiff's treatment history of having weekly therapy sessions and using medication, the Court cannot conclude that Plaintiff's treatment was conservative when viewed holistically, and on this record.. Furthermore, Plaintiff's testimony about her mental condition correlated with the opinion of her treating physician, Dr. Hayden. (*See* AR at 354-56, 492-95.)

## VI.

## REMAND IS APPROPRIATE

1    This Court retains discretion to remand or reverse and award benefits.

2   *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989).

3   Where no useful purpose would be served by further proceedings, or where the

4   record has been fully developed, it is appropriate to exercise this discretion to direct

5   an immediate award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

6   (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as*

7   *amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000).  Where there are

8   outstanding issues that must be resolved before a determination can be made, and it

9   is not clear from the record that the ALJ would be required to find plaintiff disabled

10  if all the evidence were properly evaluated, remand is appropriate.  *See Benecke*, 379

11  F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

12       Here, there are outstanding issues which must be resolved before a final

13  determination can be made.  On remand, the ALJ shall reconsider Plaintiff's

14  subjective complaints and the resulting functional limitations, and either credit

15  Plaintiff's testimony or provide clear and convincing reasons supported by

16  substantial evidence for rejecting them.  The ALJ shall also reassess the credibility

17  of Plaintiff's friend.  In addition, the ALJ shall reassess the medical opinions in the

18  record and provide sufficient reasons under the applicable legal standard for

19  rejecting any portion of the medical opinions.  If necessary, the ALJ shall obtain

20  additional information and clarification regarding Plaintiff's functional limitations.

21  Further, the ALJ shall then proceed through steps three through four and, with the

22  assistance of a vocational expert, reassess his step five determination.

23  *///*

24  *///*

25  *///*

26

27       Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

28  **REVERSING** the decision of the Commissioner denying benefits and

**REMANDING** the matter for further administrative action consistent with this decision.

Dated: May 25, 2011

_/s/ Jay C. Gandhi_

Hon. Jay C. Gandhi
United States Magistrate Judge